**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

DAVID WELLINGTON,

Petitioner,

v.

No. 1:24-cv-01279 DHU-JMR
No. 1:21-cr-00853 WJ-JMR

UNITED STATES OF AMERICA,

Respondent.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Petitioner David Wellington's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. CV Doc. 1; CR Doc. 158 (Motion). Petitioner is a federal prisoner and proceeding *pro se.* He asks the Court to vacate his conviction based on an alleged untimely dismissal of Count 2 of his indictment, a *Brady* violation, and ineffective assistance of counsel. Wellington subsequently filed two supplements to his Motion, adding additional ineffective assistance of counsel claims. CV Doc. 2, 4. The United States responded to the Motion and supplements. CV Doc. 7. Wellington filed a reply. CV Doc. 13. Having reviewed the record and the relevant law, the Court will dismiss the Motion with prejudice and deny a certificate of appealability.

## BACKGROUND

On June 23, 2021, Wellington was charged with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count 1), and one count of operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960 (Count 2). CR Doc. 13 (Indictment). On April 24, 2023, Wellington pled guilty to Count 1 of the Indictment pursuant to a Plea Agreement. CR Doc. 86 (Plea Agreement). Within the Plea Agreement, Wellington

admitted that he and his partner operated a business for the purpose of creating limited liability companies on behalf of their clients to assist them in underreporting income and evading taxes. *Id.* at 3-9. The Government agreed to recommend "a downward variance in the equivalent of two offense levels" and "[f]ollowing sentencing . . . move to dismiss Count 2 of the indictment." CR *Id.* at 9, 14.

Following issuance of the Presentence Report and a full opportunity to object, the Court held a sentencing hearing. CR Docs. 91, 98, 148. On September 10, 2024, Wellington was sentenced to a total term of 40 months imprisonment and 3 years supervised release. CR Doc. 151, 152. He was also directed to pay $5,556,066.96 in restitution to the Internal Revenue Service (IRS). CR Doc. 152. At the time of his sentencing, the Court could have remanded Defendant to the custody of the United States Marshal Service but, instead, granted self-surrender. CR Doc. 151 at 3. Final Judgment was entered on Defendant's conviction and sentence on October 9, 2024. CR Doc. 152 (Judgment). On October 21, 2024, the Government moved to dismiss Count 2 in accordance with the Plea Agreement. CR Doc. 153. The Court granted the dismissal the following day on October 22, 2024. CR Doc. 154.

Wellington timely filed the instant Motion pursuant to Section 2255. CV Doc. 1. In ground one, he contends the Government breached his Plea Agreement by "failing to legitimately dismiss Count 2" of his indictment, which frustrated his ability to file an appeal. *Id.* at 4. In ground two, he argues the Government committed a *Brady* violation by failing to produce exculpatory evidence. *Id.* In ground three, he alleges five ineffective assistance claims against his attorney. *Id.* Subsequent to filing his Motion, Wellington submitted a Supplement, adding three additional ineffective assistance claims. CV Doc. 2.

## DISCUSSION

Since Wellington is in federal custody pursuant to the judgment of a federal court, 28 U.S.C. § 2255 applies. A district court may grant relief under § 2255 only if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255.

A. *Ground 1: Breach of Plea Agreement*

Wellington claims the Government's motion to dismiss Count 2, filed on October 21, 2024, was a breach of his Plea Agreement because it was a "post-final judgment act" wrongly made "after [his] case had already been 'terminated.'" CV Doc. 1 at 4, 13-14. He argues that because the final judgment was issued prior to the dismissal of Count 2, the "[p]rocedural validity is therefore in question," "Count 2 may still be legally pending," and the delay in dismissing Count 2 frustrated his ability to appeal his conviction. *Id.* at 4, 13-14.

The Court accepted Wellington's plea of guilty as to Count 1 of his indictment on April 20, 2023. CR Doc. 84. Within Wellington's Plea Agreement, the Government agreed to the following provision:

> 22. Provided that the Defendant fulfills the Defendant's obligations as set out above, the United States agrees that:
>
> a. Following sentencing, the United States will move to dismiss Count 2 of the indictment.

CR Doc. 86 at 14.

The Final Judgment was entered on Defendant's conviction and sentence on October 9,

2024. CR Doc. 152 (Judgment). The Government moved to dismiss Count 2 on October 21, 2024. CR Doc. 153. The Court granted the dismissal of Count 2 on October 22, 2024. CR Doc. 154. In a criminal case, a defendant must file a notice of appeal within 14 days after the district court enters the judgment or order he intends to appeal. *See* Fed. R. App. P. 4(b)(1)(A). Wellington's notice of appeal was postmarked on May 6, 2025. The Tenth Circuit dismissed his appeal for untimeliness, holding that because the District Court's final judgment was entered on October 9, 2024, he had until October 23, 2024 to appeal, and his notice was filed more than six months after the allotted time. *U.S. v. Wellington*, Case No. 25-2046 (8th Cir. 2025).

A petition under § 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Relief is available where "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Any confusion Wellington may have had as to when the time for filing an appeal began is not a basis to vacate his conviction because he has not pointed to a constitutional violation. Wellington entered a plea of guilty to Count 1 of the Indictment in accordance with his Plea Agreement. During the sentencing hearing, Wellington affirmed he understood he was entering a plea of guilty to Count 1 only, and the Government would be dismissing Count 2 after sentencing. *See* CR Doc. 182 at 10, 16-18. The Government promised to dismiss the remaining count, which it did. CR Doc. 153. The October 9, 2024 Final Judgment relates only to Count 1 – the charge of conspiracy to defraud the United States in violation of 18 U.S.C. § 371. *See* CR Doc. 152. As the Tenth Circuit has already stated, Wellington had until October 23, 2024 to file an appeal. The Tenth Circuit found no issues with the finality of the October 9, 2024 Judgment when it dismissed his appeal as untimely.

Further, this Court has already explained why this exact argument fails. On January 2, 2025, Wellington filed a *pro se* motion requesting he be permitted to avoid his self-surrender until after the instant § 2255 Motion is decided. In denying the request, this Court explained:

> Although the Court is not ruling on the Defendant's § 2255 motion at this time, the Court concludes that filing of the § 2255 motion does not afford Defendant any basis to delay self-surrender or serving his sentence on Count 1. Defendant Wellington's § 2255 motion raises a question of the timeliness and validity of the United States' dismissal of Count 2 of the Indictment. . . . **Whether or not Count 2 was properly dismissed in accordance with the Plea Agreement between Defendant Wellington and the United States does not affect the validity or finality of his guilty plea, conviction, sentence, or judgment on Count I.** *See* Doc. 86 at 2 and 14; Fed. R. Crim. P. 32; Fed. R. App. P. 4(b)(3). **Further Wellington agreed to waive both any direct appeal and any collateral attack on the judgment.** (Doc. 86 at 13). Defendant cannot try [a] back-door suspension of the self-surrender requirement by an improper collateral attack on his conviction or sentence.

CR Doc. 162 at 2 (emphasis added). Wellington pled guilty and was convicted on Count 1. The subsequent dismissal of Count 2 had no bearing on whether Count 1 was imposed in violation of the Constitution or laws of the United States. The Court will not find a different conclusion here.

Further, as the Tenth Circuit highlighted, Wellington's Plea Agreement, contains the following "Waiver of Appeal:"

> 18. The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence, as well as any order of restitution entered by the Court, except as to the issue of the Court's determination of the tax loss for purposes of the applicable Guideline range and restitution. The waiver extends to any challenge to the manner in which the sentence was determined or imposed, including the district court's authority to make findings supporting the sentence.
>
> 19. The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this cause number but may nonetheless appeal the determination of the revocation Guideline range.

> 20. The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a).
>
> 21. In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

CR Doc. 86 at 13 (emphasis added).

A petitioner's waiver of the right to collaterally attack his conviction and sentence in a plea agreement is generally enforceable. *United States v. Cockerham*, 237 F.3d 1179, 1181-83 (10th Cir. 2001). When a petitioner waives the right to collaterally attack his or her sentence in a plea agreement but later files a motion pursuant to § 2255, the Court must determine (1) whether the collateral attack falls within the scope of the waiver; (2) whether the defendant knowingly and voluntarily waived his or her right to collateral review; and (3) whether enforcing the waiver would result in a miscarriage of justice. *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (citing *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam) (reviewing waiver of appellate rights)); *see also Cockerham*, 237 F.3d at 1183 ("the constraints which apply to a waiver of the right to direct appeal also apply to a waiver of collateral attack rights"). The Court must "strictly construe[]" the scope of the waiver, and "any ambiguities . . . will be read against the Government and in favor of" the petitioner's right to collateral review. *Id.* (citation omitted).

First, Wellington's claims fall squarely within the scope of the collateral attack waiver. The Plea Agreement states, "the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any

other extraordinary writ, except on the issue of counsel's ineffective assistance." CR Doc. 86 at 13. The instant claim alleging a breach of the Plea Agreement is brought pursuant to § 2255 and is an unequivocal collateral attack on his conviction and sentence.

Second, the Plea Agreement and plea colloquy demonstrate Wellington knowingly and voluntarily waived his right to collateral review. To determine whether a waiver of collateral review is knowing and voluntary, the Court looks primarily at two factors: (1) whether the plea agreement itself states that the defendant entered the agreement knowingly and voluntarily, and (2) whether there was an adequate colloquy under Rule 11 of the Federal Rules of Criminal Procedure. *Hahn*, 359 F.3d at 1325. Here, the Plea Agreement expressly stated the nature of the waiver, CR Doc. 86 at 13; contained a clear section in which Wellington agreed that the plea was made freely and voluntarily, *id.* at 14; and included a statement above his signature that he understood the terms of the agreement, *id.* at 15. At the change of plea hearing, Wellington confirmed under oath that no one forced or threatened him to sign the Plea Agreement, and he understood he was waiving his right to appeal and to file a collateral attack on his conviction and sentence. CR Doc. 182 at 9, 21-22. The Court confirmed that Wellington reviewed the Plea Agreement with his attorney, including his waiver of appeal rights section. *Id.* at 8, 22. The Court accepted his plea, finding he was "competent to enter an informed plea," and received a verbal assurance from Wellington that he understood the consequences of his plea. *Id.* at 33-35.

Third, Wellington has not met his burden of establishing a miscarriage of justice. "[A] miscarriage of justice through enforcement of a waiver occurs only in one of four situations: '[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid,

[3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.'" *Viera*, 674 F.3d at 1219 (quoting *Hahn*, 359 F.3d at 1327); *see also United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007) ("*Miscarriage of justice* . . . has a narrow meaning" in the context of an appellate waiver.). Wellington does not assert, and the Court cannot find, that any of these situations occurred in this case. As such, his breach of Plea Agreement claim is not only meritless, but also barred by the collateral attack waiver. Ground one will, therefore, be denied.

B. *Ground 2: Brady Violations*

Wellington claims the Government committed a *Brady* violation because it improperly failed to disclose two categories of exculpatory evidence which, if released, would have caused him to reject the Plea Agreement and proceed to trial. CV Doc. 1 at 5, 15-16. First, he contends the Government "had a duty to learn of and disclose" all of the bank's "Know Your Customer" records, which he argues would have shown that the bank had determined his accounts were legal, and had no issue with his business partner being the sole signatory on the client accounts. *Id.* at 15. Second, he asserts the Government should have disclosed evidence as to whether the IRS complied with the proper statutory protocols in its attempt to collect outstanding taxes from one of his clients. *Id.* at 16. He claims that such evidence would have shown the IRS was "barred by law" from collection because the agency did not engage in the proper statutory proceedings. *Id.*

The Tenth Circuit has held that in limited circumstances, a defendant who has pled guilty may challenge the voluntariness of his plea based on the government's failure to produce exculpatory material as required under *Brady v. Maryland*, 373 U.S. 83 (1963). *United States v.*

*Wright*, 32 F.3d 491, 496 (10th Cir. 1994). To establish a *Brady* violation, the defendant must prove: (1) the prosecution suppressed and concealed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material in the sense that there is a reasonable probability its disclosure would have resulted in a different outcome. *Brady*, 373 U.S. at 87. *See also Hooks v. Workman*, 689 F.3d 1148, 1179 (10th Cir. 2012); *United States v. Combs*, 267 F.3d 1167, 1172 (10th Cir. 2001); *United States v. DeLuna*, 10 F.3d 1529, 1534 (10th Cir. 1993). "A *Brady* claim fails if the existence of favorable evidence is merely suspected." *United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009). That the evidence exists must be established by the defendant. *See United States v. Lopez*, 372 F.3d 1207, 1209-11 (10th Cir. 2004) (because the defendant failed to establish that the government promised leniency to prosecution witnesses, there could be no *Brady* violation in the government's failure to turn over documentation of such promises); *United States v. Warren*, 454 F.3d 752, 759 (7th Cir. 2006) (defendant failed to establish existence of any document withheld by government, so "his *Brady* claim fails to get off the ground."). The defendant must also show that the favorable evidence was in the possession or control of the Government. *See United States v. Gardner*, 244 F.3d 784, 788 (10th Cir. 2001); *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) ("*Brady* obviously does not apply to information that is not wholly within the control of the prosecution."); *United States v. Maldonado-Rivera*, 489 F.3d 60, 67 (1st Cir. 2007) ("For *Brady* to operate, the government not only must know about undisclosed evidence but also must have custody or control of that evidence.").

As to the first category of evidence – the bank's "Know Your Customer" records – Wellington has not shown that the United States concealed or suppressed evidence as he only claims it should have learned and disclosed of such documents. Despite his argument otherwise,

"*Brady* does not require the United States to disclose evidence that is not in its possession or to seek out information from third parties." *Hahn v. United States*, Case No. 21-CV-0880 KWR/DLM, 2024 WL 4817468, at *6 (D.N.M. Nov. 18, 2024), *report and recommendation adopted*, Case No. 21-CV-0880 KWR/DLM, 2025 WL 1135067 (D.N.M. Apr. 17, 2025) (citing *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999); *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991)). Further, the Court cannot evaluate whether such evidence would have been favorable to the defense or material because his claim only assumes their existence. Wellington writes that "[pr]esumably the bank complied with KYC requirements" and assumes such records would be exculpatory. CV Doc. 1 at 5. The Court cannot find that the Government was obligated under *Brady* to obtain records that may or may not have been kept by a private entity and provide them to Wellington. Notably, the Government represents that it has no such records: "The Government does not have any such records in its possession besides what it has already provided[.]" CV Doc. 7 at 11. Thus, Wellington has not sufficiently demonstrated that any alleged government concealment deprived him of a full and fair opportunity to litigate his claim.

As to the second category – "[e]vidence of whether or not the government complied with all the required pre-collection proceedings" – Wellington again has not shown that any such records exist, let alone records that would be materially favorable to him. He pled guilty to conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Under this Count, the Indictment charged him with conspiring with another to find clients who sought to conceal income from the IRS, register LLCs without identifying the actual owners on corporate documents, opening bank accounts without listing the owner as a signatory, providing mail forwarding services to help conceal the identity of the actual owners of the LLCs, and depositing and withdrawing

business income through accounts that the IRS could not associate with the actual owners. CR Doc. 13 at 4. The existence of potential records related to the IRS's attempts to collect outstanding taxes from his clients merely speculates such evidence could have helped his defense on a conspiracy charge. Wellington's bare allegations fail to meet the *Brady* requirements.

Finally, evidence is material if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceedings would have been different. *Knighton v. Mullin*, 293 F.3d 1172 (10th Cir. 2002). Thus, Wellington must show that he would not have entered a guilty plea and would have insisted on going to trial had the Government found and produced the bank's "Know Your Customer" records and documentation of the efforts the IRS took to collect taxes from his client's unreported income. "Assessment of that question involves an objective inquiry that asks not what a particular defendant would do but rather what is the likely persuasiveness of the withheld information." *State v. Walters*, 269 F.3d 1207, 1215 (10th Cir. 2001).

Here, any defendant in Wellington's position at the time of the plea hearing could assume the bank kept "Know Your Customer" records and the IRS had documentation about their tax collection efforts. However, during his plea hearing, Wellington confirmed he had detailed conversations with his attorney about his criminal case, but did not express any concerns with the scope of discovery:

> THE COURT: Right. Have you discussed the indictment, the charges in this case, and all aspects of your case with your lawyer?
>
> THE DEFENDANT: We did. We had pretty extensive discussions about it.
>
> THE COURT: Okay. Are you fully satisfied with the legal representation and legal advice given to you in this case by your attorney, Mr. McFarland?
>
> THE DEFENDANT: Yes, so far.

THE COURT: Okay. In terms of questions you had, was he able to answer your questions to your satisfaction?

THE DEFENDANT: Yes.

CR Doc. 182 at 5.

"[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269 (10th Cir. 2010) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). "[S]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74.

A review of the plea colloquy evidences that Wellington had "extensive" opportunities to speak with his attorney, that he reviewed the facts and circumstances of the case with his counsel, and he did not express concern about any evidence he or his attorney did not have the opportunity to review. Had he believed the Government was suppressing the records described in his instant motion to vacate, he could have spoken to his attorney about his concerns prior to entering his plea and informed the Court that he had additional questions related to the evidence in this case. Relevantly, the factual basis for the alleged concealed evidence existed at the time of his change of plea hearing and was not learned after his plea or sentencing. Thus, the Court cannot find there was a reasonable probability that Wellington would have proceeded to trial had he gained access to the stated records. Wellington's *Brady* claim will, therefore, be denied.

C. *Ground 3: Ineffective Assistance Counsel*

Within the instant § 2255 Motion, Wellington asserts the following claims of ineffective assistance of counsel: (1) failure to challenge the Plea Agreement which allowed for Count 2 to be dismissed after sentencing; (2) failure to raise the issue of the Government's *Brady* violations; (3)

failure to argue that the IRS had no right to collect taxes from an LLC and, thus, he could not have defrauded the Government; and (4) failure to raise the Financial Right to Privacy Act and Paperwork Reduction Act as defenses. CV Doc. 1 at 7, 16-18.

In his first supplement to the § 2255 Motion, Wellington asserts three additional claims of ineffective assistance of counsel: (1) failure to challenge the indictment; (2) failure to raise the Mandatory Victim Restitution Act as a defense; and (3) incorrect advice that the time for filing his appeal started "from entry of the dismissal order." CV Doc. 2 at 1-2. He also claims that the Court did advise him of his appeal rights. Wellington's Second Supplement to the § 2255 motion provides additional arguments for why the Paperwork Reduction Act should have been argued by his attorney.

A successful ineffective assistance of counsel claim must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must show "[c]ounsel's performance was deficient" and committed "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 688. In other words, the representation must fall below an objective standard of reasonableness based on prevailing professional norms. *Id.* at 687-88. The Court is required to "eliminate the distorting effects of hindsight" and "indulge a strong presumption that counsel acted reasonably." *Welch v. Workman*, 639 F.3d at 980, 1012 (10th Cir. 2011) (quotations omitted). The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)); *Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997)

("There is a strong presumption that counsel's performance falls within the wide range of professional assistance, the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.") (citations omitted).

The second prong of *Strickland* requires the petitioner to affirmatively prove the deficient performance prejudiced the defense. *Battenfield v. Gibson*, 236 F.3d 1215, 1234 (10th Cir. 2001) (citing *Strickland*, 466 U.S. at 693). The movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of pleas, the petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). *See also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("[A] defendant must show the outcome of the plea process would have been different with competent advice"). Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

*1. Failure to challenge the provision in the Plea Agreement dismissing Count 2, and failure to raise the issue of the Government's Brady violations*

Wellington argues his counsel was ineffective for advising him to enter into a Plea Agreement that allowed the second count of his two-count indictment to remain pending after sentencing as it "created an unnecessary procedural nightmare," and for not pursuing *Brady* violation arguments related to the Government's alleged suppression of the bank's "Know Your Customer" and IRS collection records. CV Doc. 1 at 5.

As discussed in detail above, the dismissal of Count 2 had no bearing on whether Count 1

was imposed in violation of the Constitution or laws of the United States because it did not affect the validity or finality of his guilty plea, conviction, sentence, or judgment on Count I. *See* Doc. 86 at 2 and 14; Fed. R. Crim. P. 32; Fed. R. App. P. 4(b)(3). As such, the Court cannot find that his counsel was deficient in failing to advise him differently as to the provision in the Plea Agreement that allowed for the dismissal of Count 2 at some time after his sentencing.

It is also clear that he was not prejudiced by any confusion about the finality of his Judgment because a criminal defendant must file a notice of appeal within 14 days after the district court enters the judgment he intends to appeal. *See* Fed. R. App. P. 4(b)(1)(A). Here, the Final Judgment was entered on October 9, 2024. CR Doc. 152 (Judgment). The Court granted the dismissal of Count 2 on October 22, 2024. CR Doc. 154. Wellington's notice of appeal was postmarked on May 6, 2025. If Wellington had any actual confusion as to the finality of the Judgment, he would have filed his notice of appeal 14 days after the Court granted dismissal of Count 2 on October 22, 2024, not six months later. He simply does not establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694.

As to the *Brady* arguments, Wellington knew the facts of his case at the time he accepted his Plea Agreement and confirmed that he had extensive conversations with his attorney regarding his criminal case. *See* CR Doc. 182 at 5. To prevail on an ineffective assistance claim when a guilty plea was entered, a defendant must show there was a reasonable probability that, but for counsel's errors, he would have chosen to go to trial. *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001). The alleged *Brady* violations could have been discussed with his attorney prior to making his plea. During his plea hearing, Wellington expressed no issues with discovery, and

he does not claim to have learned of any specific exculpatory information subsequent to his plea and sentencing. He only argues that there are records the bank and the IRS might have had that his attorney should have acquired. The potential for such documents to exist does not support the probability that he would have chosen to go to trial rather than enter a guilty plea. Wellington simply has failed to establish that any *Brady* violations occurred. Ineffective assistance cannot be found when counsel fails to make a futile argument, or to pursue meritless theories. *United States v. Cook*, 45 F.3d 388, 392-93 (10th Cir. 1995); *United States v. Kramer*, 168 F.3d 1196, 1202 (10th Cir. 1999).

*2. Failure to argue that the IRS had no right to collect taxes from an LLC*

Wellington next contends that his attorney provided ineffective assistance because he did not question whether the IRS could even assert a tax claim against an individual member of an LLC. CV Doc. 1 at 17. In support, Wellington cites to "NM Stat 53-19-29, which states: 'Property transferred to or otherwise acquired by a limited liability company is property of the limited liability company and not of the members.'" *Id.* He claims that had he been advised of the fact that the IRS may not even have had a legal right to collect taxes from an LLC member, he would not have entered the Plea Agreement. *Id.*

This argument is misplaced. As the Government points out in its Response, "[t]he [Count 1] charges against Wellington stemmed from interfering with taxation of individuals' income resulting from LLC membership, not taxation of the LLCs themselves." CV Doc. 7 at 18. The indictment charged Wellington with a conspiracy related to the operation of his business, National Business Services LLC. CR Doc. 13 (Indictment). Wellington and his business partner marketed their company as offering a method for clients to circumvent assessment and payment

of their personal income taxes, and subsequently registered LLCs on behalf of clients who sought to dissociate from certain future income. CR Doc. 13, 45. The corporate documents identified National Business Services, Wellington, or his partner as the organizer or registered agent of the LLCs, but no publicly filed documents would identify the members of the LLCs or its beneficial owners. CR Doc. 45, 86. Wellington and his business partner used anonymous corporate documents to obtain Employer Identification Numbers for the LLCs, so that future IRS Form 1099s would be associated with the anonymous LLCs rather than the actual owners. Doc. 12, 45, 86. National Business Services would use the anonymous corporate documents to open bank accounts for the LLCs and provide clients with pre-signed checks, debit cards, and online banking credentials, so the client could make deposits and withdrawals without revealing their identity. *Id.* Wellington pled guilty to these facts pursuant to the Plea Agreement. CR. Doc. 86.

Because ineffective assistance cannot be found when counsel fails to make a futile argument, or to pursue meritless theories, Wellington's attorney cannot be said to have provided deficient defense. Count 1 charged Wellington with conspiracy to defraud the United States by helping individuals avoid personal income tax through the creation of LLCs. The New Mexico state statute providing that LLCs can hold property in its own name does not provide a meritorious defense and is not relevant to Wellington's criminal charge of conspiracy. Consequently, neither deficient performance nor prejudice can be found.

*3. Failure to raise the Financial Right to Privacy Act as a Defense*

Wellington asserts his counsel was ineffective for failing to raise the Financial Right to Privacy Act (FRPA), 12 U.S.C. § 3402, *et seq.*, as a defense because it "generally prohibits government access to the records of customers of financial institutions" and the Government

should have produced evidence that it followed the proper procedures to obtain customer records through a "summons or some other sort of demand." CV Doc. 1 at 17. He argues that the "FRPA is an entire body of potentially applicable law that [his] prior counsel apparently did not even consider." *Id.*

Here, Wellington confirmed in his plea colloquy that he had the opportunity to and did talk to his counsel about possible defenses:

> THE COURT: And then the next sentence [of the Plea Agreement] says: "My attorney has advised me of my rights, of possible defenses, of the sentencing factors in 18 U.S.C. 3553(a), of the relevant sentencing guideline provisions, and the consequences of entering into this agreement." Is that true, sir?
>
> THE DEFENDANT: Yes.

CR Doc. 182 at 8-9. "Counsel's advice need not be errorless, and need not involve every conceivable defense, no matter how peripheral to the normal focus of counsel's inquiry, but it must be within the realm of competence demanded of attorneys representing criminal defendants." *Scott v. Wainright*, 698 F.2d 427, 429 (11th Cir. 1983). *See also Evans v. Meyer*, 742 F.2d 371, 374 (7th Cir. 1984) ("It is not the normal practice of lawyers to advise their clients of every defense or argument or tactic that while theoretically possible is hopeless as a practical matter."). "[U]nless an attorney's advice is clearly legally erroneous, such as telling a client that accepting a plea is tantamount to perjury or threatening to withdraw from the case, it is not constitutionally deficient." *United States v. Mowery*, Case No. 10-CV-1263JP-WPL, 2012 WL 12903741, at *2 (D.N.M. July 31, 2012) (citing *Williams v. Jones*, 571 F.3d 1086, 1091 (10th Cir. 2009)). Very simply, "it is clear that the law does not require counsel to raise every available nonfrivolous defense." *Gallegos v. Bravo*, No. CV 10-0372 JB/KBM, 2011 WL 13195994, at *2 (D.N.M. July 26, 2011), *report and recommendation adopted*, No. CV 10-0372 JB/KBM, 2011 WL 13195975 (D.N.M.

Sept. 2, 2011).

Although Wellington asserts he would have gone to trial if his counsel informed him of the FRPA, it is completely unclear from his Motion how his charge of conspiracy to defraud the Government could have been saved by an FRPA defense. "[W]hen a defendant who has pleaded guilty brings an ineffective assistance claim, he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (citation and internal quotation marks omitted). Wellington is also required to show that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

Here, Wellington makes no showing that he reasonably would have gone to trial on both charges, rather than proceed with the Plea Agreement, which dismissed one of the two charges against him. Rather, he states in a conclusory fashion: "Had I been advised of the application of this law to the facts alleged in the indictment, I would not have pled guilty." *See U.S. v. Clark*, 596 Fed. Appx. 696, 701-02 (10th Cir. 2014) (defendant's allegation that he would have gone to trial but for counsel's errors was insufficient because he had not shown that rejecting the plea would have been rational, given the "evidence and the significant benefits which defendant received" as part of the plea agreement). This. Wellington has not demonstrated deficient performance or prejudice.

*4. Failure to raise the Paperwork Reduction Act as a Defenses*

Wellington asserts his counsel was ineffective for failing to raise the Paperwork Reduction Act (PRA), 44 U.S.C. §§ 3501, *et seq.*, as a defense because the Government did not show

compliance with the PRA when it sought disclosure of LLC members.[1] CV Doc. 4. Essentially, Wellington reasons that he could not have conspired to defraud the United States as charged in Count 1 by concealing the identity of LLC owners because the Government did not have unfettered access to the bank records. *See id.* He argues the Government could only collect information about the identities of bank account owners if the request contained the proper approval number and expiration date. *See id.*

The PRA, 44 U.S.C. §§ 3501-3520, requires that federal agencies submit all "information collection requests" to the Director of the Office of Management and Budget (OMB) for review. 44 U.S.C. § 3507. Any information collection request approved by the OMB Director must be assigned a control number. 44 U.S.C. § 3504. An agency is precluded from conducting the collection of information without having the information collection request approved by the OMB Director. 44 U.S.C. § 3507(a), (f). The Paperwork Reduction Act expressly provides that:

> [N]o person shall be subject to any penalty for failing to comply with a collection of information . . . if . . . (1) the collection of information does not display a valid control number . . . ; or (2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.

44 U.S.C. § 3512(a).

Wellington's argument fails because just as the Tenth Circuit has held that defendants "cannot use the PRA to side-step criminal offenses arising under the Internal Revenue Code," *United States v. Springer*, 444 F. App'x 256, 262 (10th Cir. 2011), he analogously cannot succeed in arguing that the PRA would have been a proper defense to avoid a charge of conspiracy to

[1] To the extent Wellington argues counsel was ineffective for raising the PRA defense as to Count 2, such an argument fails because he was only convicted and sentenced on Count 1.

defraud the Government. The Government's compliance with the PRA is not an element of the crimes listed in his Indictment, and Wellington has not shown how any deviation from the PRA by the bank or the Government would be a viable affirmative defense for his criminal prosecution. He also does not show a reasonable probability that, had his counsel raised a PRA defense, he would have opted to go to trial. Consequently, Wellington has not demonstrated deficient performance or prejudice.

*5. Failure to Challenge the Indictment*

Wellington contends that his counsel was ineffective for "failing to argue Count 1 of the indictment failed as a matter of law because it did not satisfy the requirem[e]nt for 'interdependence' among the alleged co-conspirators." CV Doc. 2 at 1.

"An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Gama-Bastidas*, 222 F.3d 779 (10th Cir. 2000); *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997). "An indictment generally is sufficient if it sets forth the offense in the words of the statute so long as the statute adequately states the elements of the offense.'" *United States v. Salazar*, 720 F.2d 1482, 1486 (10th Cir. 1983), *cert. denied*, 469 U.S. 1110 (1985). "The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *United States v. Carillo*, 2006 WL 8443912, at *2 (D.N.M. Sept. 27, 2006) (quoting *United States v. Kendall*, 665 F. 2d 126, 135 (7th Cir. 1981)). "[W]here the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges." *United States v. Redcorn*, 528 F.3d

727, 733 (10th Cir. 2008) (internal citations omitted).

There is nothing in the record to suggest that the Indictment was defective. 18 U.S.C. § 371, conspiracy to commit offense or to defraud United States, provides:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

Count 1 of the Indictment reads, in part:

> From on or about January 28, 2005, and continuing to on or about March 14, 2017, in Bernalillo County, in the District of New Mexico, and elsewhere, the defendants, DAVID WELLINGTON, UCCl, and JERRY SHROCK, knowingly, unlawfully and willfully combined, conspired, confederated, agreed, and acted interdependently with one another and with others known and unknown to the Grand Jury to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the Department of the Treasury in the collection of the revenue; to wit, income and probate taxes.

Indictment, CR Doc. 13 at 3. The Indictment further describes the manner, means, and overt acts by which Wellington, his business partner, and their client accomplished the objectives of the conspiracy in violation of 18 U.S.C. § 371. *Id.* at 1-6.

Here, the indictment was sufficient because it contained the elements of the offense charged against Wellington; cited to the corresponding statutory authority to fairly inform him of the charge; and included the dates of the illegal activity, the location, and the specific acts performed by himself, his business partner, and his client. Such information enabled Wellington to be sufficiently on notice of the charges against him and to ensure future prosecution for the same offense. Thus, there is no showing that Wellington's counsel was ineffective in failing to file a motion to challenge the Indictment because nothing in the record suggests that any such motion

would have been successful or caused Wellington to reject his plea offer and insist on going to trial. It is not ineffective assistance of counsel to fail to make meritless arguments. *See Martin v. Kaiser*, 907 F.2d 931, 936 (10th Cir. 1990), citing *Strickland*, 466 U.S. at 694 (no ineffective assistance absent showing of reasonable probability that outcome would have been different).

*6. Failure to argue the Mandatory Victim Restitution Act Did Not Apply*

Wellington argues his counsel was ineffective for "failing to present any argument that the Mandatory Victim Restitution Act (MVRA) did not apply because no evidence existed that [he] was the 'but-for' cause of any harm and that [he] proximately caused any harm." CV Doc. 2 at 1. He appears to take issue with the amount of restitution he owes.

The Plea Agreement Wellington entered into provided the following provisions as to restitution in relevant part:

> 16. The parties agree that, as part of the Defendant's sentence, the Court will enter an order of restitution pursuant to the Mandatory Victim's Restitution Act, 18 U.S.C. § 3663A, if applicable; if § 3663A is not applicable, the Court will enter an order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664. The Defendant agrees and acknowledges that, as part of the Defendant's sentence, the Court is not limited to ordering restitution only for the amount involved in the particular offense or offenses to which the Defendant is entering a plea of guilty, but may and should order restitution resulting from all of the Defendant's criminal conduct related to this case.
>
> 17. In this case, the Defendant agrees to pay restitution in a total principal amount to be determined by the Court, for which the Defendant [is] responsible jointly and severally with co-Defendant Jerry Shrock in this case and with Defendant Stacy Underwood in case 22-cr-1716-WJ. This amount will be payable to the United States District Court Clerk.

CR. Doc. 86 at 12 (Plea Agreement).

Wellington accepted the consequences of his Plea Agreement, which comprehended the imposition of restitution pursuant to the MVRA. Prior to accepting his guilty plea, this Court

questioned Wellington as to whether he understood the restitution provisions in the Plea Agreement. *See* CR Doc. 182 at 12-16. He answered in the affirmative and was permitted to ask questions to his satisfaction. *Id.* If Wellington disagreed with the application of the MVRA, he had sufficient opportunity to address it with his attorney or with the Court prior to asserting his plea. The Tenth Circuit consistently "denie[s] relief under . . . § 2255 to petitioners alleging that their guilty pleas were the product of ineffective assistance when their plea colloquies demonstrated otherwise." *Holt v. Brace*, 418 Fed. App'x 697, 701 (10th Cir. 2011) (collecting Tenth Circuit cases).

The Court subsequently sentenced Mr. Wellington to a term of imprisonment of 40 months and directed him to pay, jointly and severally with two other defendants, $5,556,066.96, the tax loss in this case, in restitution to the IRS. CR Doc. 152 (Judgment). In the event Mr. Wellington would be unable to pay the amount owed, the Court imposed a monthly payment schedule of the greater of $1,000 or 10% of gross monthly income. *Id.*

The MVRA applies to this case involving fraud against the United States. *See* 18 U.S.C. § 3663A(c)(1)(ii); *see, e.g.*, *United States v. Senty-Haugen*, 449 F.3d 862, 865 (8th Cir. 2006) (district court properly ordered defendant convicted of conspiracy to defraud the United States to pay restitution to the IRS under the MVRA). As the Government highlights, Wellington co-operated a business that facilitated the evasion of tax liability for clients, which clearly shows proximate cause. To argue the MVRA did not apply in this case would have been meritless. Again, ineffective assistance cannot be found when counsel fails to make a futile argument, or to pursue meritless theories. *Cook*, 45 F.3d at 392-93; *Kramer*, 168 F.3d at 1202.

Wellington fails to establish any prejudice from the alleged error. He has made no

showing that he would have elected to forgo his guilty plea and proceed to trial if he had his attorney argued against the application of the MVRA. *See Cardenas-Uriarte v. United States*, 2013 WL 12327787, at *5 (D.N.M. Nov. 18, 2013), *report and recommendation adopted*, 2014 WL 12796936 (D.N.M. Feb. 12, 2014) ("It is beyond dispute that, at his plea hearing and prior to entering a guilty plea, Petitioner was advised of the consequences of pleading guilty including that he could receive a term of imprisonment up to 40 years."). Further, his Plea Agreement contained a provision allowing Wellington to directly appeal the tax loss amount ordered by the Court at sentencing. *See* CR. Doc. 86 at 13 (Plea Agreement). Therefore, Petitioner cannot show he was prejudiced by counsel's supposed failure to describe those same consequences."). Consequently, Wellington has established neither deficient performance nor prejudice, and thus he fails to show ineffective assistance counsel under *Strickland*.

*7. Failure to properly advise him of the time for filing an appeal*

Finally, Wellington faults his counsel for incorrectly informing him that his time for appeal likely started "from entry of the post-judgment dismissal order, and he claims he "was not advised of any appeal rights by the Judge at sentencing." CV Doc. 2.

Taking Wellington's assertion as true that his attorney provided the wrong date for when his time to file an appeal started, the Court cannot find that he was prejudiced. The Final Judgment was entered on Count I on October 9, 2024. CR Doc. 152 (Judgment). The Government moved to dismiss Count 2 on October 21, 2024. CR Doc. 153. The Court granted the dismissal of Count 2 on October 22, 2024. CR Doc. 154. In a criminal case, a defendant must file a notice of appeal within 14 days after the district court enters the judgment or order he intends to appeal. *See* Fed. R. App. P. 4(b)(1)(A). Wellington's notice of appeal was

postmarked on May 6, 2025. The Tenth Circuit dismissed his appeal for untimeliness, holding that because the District Court's final judgment was entered on October 9, 2024, he had until October 23, 2024 to appeal, and his notice was filed more than six months after the allotted time. *U.S. v. Wellington*, Case No. 25-2046 (8th Cir. 2025).

According to Plaintiff, his attorney advised him that the appeal clock started on October 22, 2024, which would have ended fourteen days later on November 5, 2024. However, the record shows that Wellington did not postmark his notice of appeal until several months later on May 6, 2025. It is therefore clear that Plaintiff's delay was *not* caused by his attorney's alleged deficient performance because if he listened to his attorney, his appeal would have been 13 days late, not 209 days. Based on his extreme delay, it is disingenuous to argue that he was misled by his attorney's advice for him to file an appeal within 14 days of the October 22, 2024 Order dismissing Count 2 of his indictment.

As to the second argument, the record clearly shows that this Court reviewed his appeal rights with him before accepting his plea of guilty and before his sentencing.

> THE COURT: Okay. Now, there is a paragraph -- let me find it here. It's on Page 13, Paragraph 18. Normally if you had exercised your right to go to trial and the jury convicted you, after sentencing, do you understand that you would have the right to appeal your conviction, the sentence imposed, and any other findings that I made prior to sentencing?
>
> THE DEFENDANT: Yes.
>
> THE COURT: With that understanding, this plea agreement states that you are waiving your right to appeal your conviction and sentence, as well as any order of restitution entered by the Court, except as to the issue of the Court's determination of the tax loss for purposes of the applicable guideline range in restitution. Do you understand that, sir?
>
> THE DEFENDANT: I do, yes.

> THE COURT: All right. And you discussed that waiver aspect of this plea agreement with your lawyer?
>
> THE DEFENDANT: I did, yes.
>
> THE COURT: Okay. And also, the waiver extends to any challenge to the manner in which the sentence was determined or imposed, including the District Court's authority to make findings supporting the sentence. Do you understand that also includes the waiver?
>
> THE DEFENDANT: Yes.

CV Doc. 182 at 21-22. There is no requirement for the Court to repeat the same colloquy at his sentencing hearing. Consequently, Wellington has established neither deficient performance nor prejudice, and thus he fails to show ineffective assistance counsel under *Strickland*.

C. *Evidentiary Hearing*

Courts shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In other words, where the record for a § 2255 motion "conclusively and expressly belie[s] [Petitioner's] claims," no evidentiary hearing is required. *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see also In re Lindsey*, 582 F.3d 1173, 1175-76 (10th Cir. 2009) (holding that an evidentiary hearing is not needed if "the district court has concluded that the record does not entitle the prisoner to relief; either the prisoner has failed even to allege facts on which relief could be predicated, or the record conclusively contradicts the prisoner's allegations"). For the reasons discussed above, the Court finds that the record is sufficient to dispose of each of Wellington's allegations and none of his arguments warrant a hearing.

D. *Certificate of Appealability*

Habeas Corpus Rule 11 provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The "petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons explained above, the Court finds that reasonable jurists could not debate the denial of Wellington's § 2255 motion and, therefore, a certificate of appealability will be denied.

**IT IS HEREBY ORDERED** that:

1. Petitioner David Wellington's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (CV Doc. 1; CR Doc. 158) is DENIED with prejudice.
2. Petitioner David Wellington's Motion to Expedite Ruling on Pending § 2255 Motion (CV Doc. 14) is DENIED as moot.
3. A certificate of appealability is denied.
4. The Court will enter a separate judgment closing the civil habeas case.

DAVID H. URIAS
UNITED STATES DISTRICT JUDGE